Mr. Justice Cox
delivered the opinion of the Court:
In the case of Mary E. Hill vs. Enoch M. Lowe, Henry M. Baker, George A. Woolley and Samuel F. Merrill, the facts seem to be as follows:
One Frank P. Hill, the husband, now deceased, of the complainant, was, in 1877, the owner of parts of lots 1 and 2 in square south of square 1,036 in the City of Washington. In that year, he conveyed the lots for a nominal consideration of $2,000 to one Mclntire, by an absolute deed, but it was in fact upon a secret trust to hold the property and to dispose of it according to the directions of Hill. Afterwards, by Hill’s direction, Mclntire conveyed it to a man named Clark, and Clark again, in turn, conveyed to Hill himself, by Hill’s direction. The first deed from Hill to Mclntire was put on record. The other two deeds were not recorded. Then came the consequence that we have seen so often, in *429 this Court, that the party holding the legal title defrauded somebody by conveying it to some one else than the party entitled.
While the title was in this condition,-. Hill died, after having made a will devising all his: property to his wife. The deeds from Mclntire to Clark and from Clark back to Hill seem to have’ been lost for a long time, and never to have turned up until long after certain events of which I have now to speak.
Some time after Hill’s death, Lowe, one of the defendants, a real estate agent, made a sale to Woolley, another of the defendants, of some land adjoining the property I have just described, and when thát sale was completed, Woolley inquired of Lowe if he knew who. owned the title to the property in question, remarking “ I would like to buy that if I could get a good title.” Thereupon, Lowe set himself to work to ascertain who was the owner of the property; he found that Mclntire had the legal title on record, but, in some way, he was brought into communication with Clark, who had conveyed the property hack to Hill, and also Mr. H. E. Davis, the attorney for the complainant, and was informed by both of them that Mclntire had conveyed it back to Hill. He also entered into communication with the complainant, who resided in Baltimore, and sent somebody to interview her, and heard the same facts from her. She made search for the deeds and did not find them. After repeated searches, she was unable to find them. Mr. Davis also made an unsuccessful search among his papers for these deeds. Six months elapsed, and Lowe opened correspondence with Mclntire, who resided in the north, and was informed by him that he really was the owner, and he denied the ownership of everybody else, and thereupon Lowe purchased the property of Mclntire for $500 and had him convey the land to Cockerille, and then had Cockerille convey the land to Woolley for $900, and he pocketed the difference. Woolley afterwards gave a deed of trust - to *430 secure the other defendant, Merrill, for a sum of money borrowed from him.
The bill charges that Lowe, in buying this land from Mclntire and in negotiating with the complainant, was the agent of Woolley, and that being advised of the condition of the title by the complainant,, his knowledge is to be imputed to Woolley. It charges that all of these parties entered into a conspiracy to defraud and cheat the complainant out of her property and asks that the conveyances be vacated and the property reconveyed.
Lowe,, in his answer, denies that he acted, as agent for Woolley at all. He admits he was fully informed of the claims of the complainant, but he says that- they made repeated searches for the deeds, and he did not believe they had any deeds at all; and that when he communicated with Mclntire, the latter claimed to be the owner, and wrote him letters, in which he denied the ownership of anybody else. He produces the letters. He says he got the property from Mclntire on his own account only, and not as the agent for Woolley, for $500, and he had it conveyed to Cockerille because he did not wish Woolley to see the consideration of $500 in Mclntire’s deed, as he meant to charge him a good deal more, and then he sold to Woolley for $900 and got Cockerille to convey to him, and he pocketed the difference of $400.
Woolley, also, denies that Lowe was his agent; says he had no knowledge whatever of his transactions or of the claims of the complainant, and produces a written agreement of sale between Lowe and Kintz and himself, in which they describe themselves as the agents of Cockerille and deal with him as a stranger.
. Merrill, the other defendant, professes to be a purchaser in good faith, who loaned this money and took a deed of trust.
The justice at special term was satisfied, from the evidence, that Lowe was the agent of Woolley, and that *431 Woolley, therefore, was to be charged with Lowe’s information as to the claims of the complainant upon the property. He held that Merrill, however, who took the deed of trust from Woolley, ought to be protected; but that the deed from Mclntire to Cockerille and Woolley ought to be set aside. '
We have not been able to concur in that conclusion. There is nothing in the case whatever to impugn the entire good faith of Woolley. It is obvious that he purchased this property without any notice of the defect of title, .and he paid full value, $900. There is nothing to cast suspicion upon his good faith or to show that he had any knowledge whatever of Lowe’s transactions or of the price Lowe was to pay. The loss must fall on Woolley or on the complainant. This loss was occasioned by the neglect of the complainant’s husband, under whom she claims, to put these deeds on record. The consequence was, that by reason of that neglect, it was put in the power of Mclntire to pass to Woolley a complete record title. It would, therefore, seem to be a plain case for the application of the well known rule that if a loss is to fall on one of two innocent parties, the one whose neglect or lack of foresight made the loss possible is the one who must bear the burden.
It is claimed that, as notice to the agent is notice to the principal, and as Lowe was the agent of Woolley, Woolley is, therefore, to be charged with that notice and to suffer the consequences. We do not think the evidence makes out a case of agency at all. The whole of this theory of agency is founded upon a casual expression made use of by Woolley. Lowe said: “I was selling Mr. Woolley a piece of property adjoining it at the time, and after he got that piece he said, 'Do you know who that piece belongs to?’ (meaning the piece in controversy), and I said that I did not; and he said, 'I would buy that piece if I can get it at a fair price.’ ”
On that casual expression the whole theory is founded *432 that Lowe was the agent of Woolley in making inquiries about this property and carrying out the sale to Woolley. It seems to us that all of this is perfectly consistent with the idea that if Lowe would ascertain the owner and get his authority to sell, Woolley would buy from Lowe or from the owner through Lowe. It does not appear that Lowe expected to get any compensation from Woolley for the work of buying the property or that Woolley expected to pay him anything. The fair presumption would be that in this, as in all the ordinary course of dealings by real estate agents, the agent expected to get his compensation, in the shape of a commission, from the owner and not from the purchaser, or expected to get his compensation in a purchase on his own account and a resale of the property at an advance. At all events, it would be a pretty hard case .that Woolley, who paid the full value of the property in entire ignorance, as far as appears, of any defect in the title, should lose that money, unless the agency is made perfectly clear. In a case of doubt, the presumption ought to be in favor of the party who acted in good faith, and had no actual knowledge of the defect in the title.
We are not satisfied that there was any case of agency. We are rather satisfied the other way. We think that Mr. Woolley ought to be protected, as a bona fide purchaser without notice, and that the decree below ought to be reversed, and the bill dismissed.